delivered the opinion of the court.
Shippen, President.
The first point to be decided is, whether the foreign attachments ought not to be dissolved, on the proofs given of Knox’s being an inhabitant of Pennsylvania, at the time they issued ?
We would avoid laying down any general rules as to what will, or will not, make a person an inhabitant, within the attachment law, lest cases should hereafter happen, which might come within those general rules, but were not in the contemplation of the court, in the particular case before them. We think, however, if any general rule was made, it would be reasonable, and very consonant to our laws and constitution, that the person’s residence *159] here, to make him *an inhabitant, should be so long as to give him -* the rights of citizenship, to wit, for twelve months. And we should have no hesitation in laying this down as a rule, if it were not for those cases of dispute which may arise between creditors on a domestic attachment, and creditors on foreign attachments, where it may frequently happen, that the debtor’s residence may be less than twelve months, and yet he may, and ought to be an object of the domestic attachment law, so as to have his effects divided among all his creditors, and not swept away by the first creditor who takes out a foreign attachment, (a) But in cases where a stranger comes among us, and remains here for a short time, and then goes away under such circumstances, as not to make him an object of the domestic attachment, it will always have considerable weight with us, that he has not resided here for twelve months.[1]
In Knox’s case, his residence was only eight or nine months ; the family he left behind him, does not appear to be of a kind to dénote an unequivocal continuation of his residence, being probably no more than was sufficient for his partner, Henderson’s, own accommodation as a single man.
The second question is, whether there has been such proof of a debt due, as is sufficient to show a cause of action ?.
*165 And here it will be proper to mention the reason and occasion of making the rules with regard to proofs necessary for holding to bail on writs of capias. When I came into this court, I found a practice had lately taken place, of requiring proofs of the debt, similar to those required by the statute of 12 Geo. I., so as to disable absent plaintiffs from holding defendants to bail, for want of a positive affidavit, before one of the judges of this court, of a subsisting debt. I considered this practice as not founded in law, and as tending to injure the credit of the country. That it was not founded in law, I took to be clear, from the words of our act of assembly, made shortly after the revolution, extending only such of the statute laws of England as had theretofore been in force in Pennsylvania. The act of 12 Geo. I. was certainly not in force, nor ever practised under, before the revolution. But as the judges who had sat here before me, thought.there was good reason to keep up a kind of reciprocity between England and us, upon this subject, and not being willing to relax the rule totally, it became necessary, in order to preserve an uniformity of determination in the several judges of the court, to settle another mode, so as to avoid extending an act of parliament, by their authority, which had not been extended by the legislature, and yet not to give the inhabitants of that country the same easy method of proving their debts in England, before the Lord Mayor, or other magistrate there, which had been practised, previous to the revolution, under their own acts of parliament. A middle way was, therefore, struck out; and a signature of the party to some instrument of writing, or some letter, or acknowledgment *of the debt, was made necessary to be superadded to the usual probate made before the war. This rule, however, affects the in- [*160 habitants of other countries as well as England ; and it may possibly be found necessary, at some future time, to make an alteration in it, more conformable to the general law on those subjects.(a)
But as, at the time of making the rule, we had no eye to any other kind of process than writs of capias, and it was expressly confined to them, in favor of personal liberty, we do not think it should be extended to other cases not then within our view. In cases of attachments, therefore, we think it safest to follow the law as we find it in our books, before the statute of 12 Geo. I. And as it appears by the case in 8 Mod. 323 ( Walrond v. Van Moses), that an affidavit of a plaintiff, before a notary-public in Holland, was deemed sufficient to hold the defendant to bail, we think the like affidavit, in this case, should be sufficient for the same purpose. (b)
Motion to dissolve the attachments discharged.

 See Lazarus Barnet’s case, ante, p. 152; and the note to that case.

 See Fuller v. Bryan, 20 Penn. St. 144; Pfoutz v. Crawford, 46 Id. 420; Reed’s Appeal, 71 Id. 378; Hartz v. Asahl, 1 W. N. C. 282.

 See the remarks by Chief Justice Tilghman upon the opinion of President Skip-pen in the text, reported in Walker v. Bamber, 8 S. & R. 61. The time which Judge Shippen anticipated, when it would be found necessary to make an alteration in the law respecting foreign affidavits, was supposed by C. J. Tilghman to have arrived in 1822 ; and it was then adjudged, that an affidavit of debt, made before a justice of the peace in England, was sufficient, without other evidence, to hold the defendant to hail. The same point was determined in the District Court of Philadelphia, in Baker ®. Croft, MS.

 Upon the subject of the affidavits to sustain a foreign attachment, see the note to Vienne v. McCarty, ante, p. 154.